IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| CANDANCE M. SCOTT, | § § | |
| PLAINTIFF, | § § | |
| vs. | § | CIVIL ACTION CAUSE NUMBER |
| | § | |
| AMARILLO HEART GROUP, LLP, | § | 2:12-CV-112-J |
| | § § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Candance Scott and Defendant Amarillo Heart Group, LLP filed on April 5, 2013 cross-motions regarding Plaintiff's entitlement to equitable remedies. For the following reasons, the Court will: 1) not order Plaintiff Scott's reinstatement to her employment at the Amarillo Heart Group, 2) award one year of front pay to the Plaintiff in the total amount of $49,000.00, 3) deny Plaintiff's request for Court-ordered training of the Defendant's management and employees, 4) order a remittitur of $9,000.00 on the jury's finding of back pay from the date of termination to the date of trial, and 5) find that there is sufficient evidence to sustain the jury's award of punitive damages. The Court will enter judgment upon the jury's verdict as modified herein.

### *Background*

The parties have stipulated that: 1) Plaintiff Scott worked for the Amarillo Heart Group as a Nuclear Medicine Technologist, 2) she was initially hired on a temporary basis in September of 2010, and was hired on a full-time basis on January 1, 2011, 3) she was paid $27.00 per hour by the Amarillo Heart Group, and 4) the Amarillo Heart Group terminated her on February 11, 2011.

After her termination, Plaintiff Scott timely filed her EEOC charge of discrimination on April 21, 2011. She received her February 8, 2012, right to sue letter, and filed this lawsuit on May 7, 2012, against the Defendant pursuant to Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §

2000e-5(f)(3) & (g), mirror provisions of the Texas Commission on Human Rights Act (the Texas version of Title VII), as well as a claim of wrongful termination pursuant to 42 U.S.C. § 1981./[1]

Plaintiff alleged at trial that when she reported racially discriminatory behavior to her supervisors and to Amarillo Heart Group management, Defendant Amarillo Heart Group did nothing to remedy the situation but, instead, terminated Plaintiff for pretextual reasons. The jury returned a verdict in Plaintiff's favor on damages for lost wages and benefits in the past, and awarded significant punitive damages. The jury found that her termination was retaliatory because she engaged in the protected activity of complaining about race discrimination, and further found by clear and convincing evidence that Defendant Amarillo Heart Group engaged in retaliatory termination with malice or reckless indifference to Plaintiff Scott's employment rights.

### *Reinstatement*

The Court finds that Plaintiff has not requested reinstatement at the Amarillo Heart Group, that her job position at the Amarillo Heart Group has been filled by an innocent incumbent for two or more years now, that reinstatement would require the employer to displace an existing employee, and that reinstatement would create a very uncomfortable employment situation for the Plaintiff. For these reasons, the Court finds and concludes that court-ordered reinstatement of the Plaintiff would not be an appropriate remedy. *See Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 488-89 (5th Cir. 2007).

---

[1] § 1981. "Equal rights under the law:

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) 'Make and enforce contracts' defined. For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

*Front Pay*

An award of front pay is meant to compensate a plaintiff for wages and benefits she would have received from the defendant employer in the future if not for the Defendant's wrong actions. *See Palasota, supra,* 499 F.3d at 489-90; *Gamble v. Birmingham Southern R.R. Co.,* 514 F.2d 678, 684 (5th Cir. 1975). The Court finds that front pay should be awarded as an equitable remedy in the amount of $49,000.00. In arriving at that conclusion, the Court has considered the jury verdict and the evidence admitted at trial on the amount of Plaintiff Scott's expected annualized earnings at the Amarillo Heart Group. The Court has considered and accounted for the expenses to the Plaintiff in obtaining comparable employment within her field of expertise during 2012.

In making its award of front pay, the Court has considered the fact that the Plaintiff's particular area of expertise is a area where jobs are difficult to locate. The Defendant agrees that there are only six similar or substantially equivalent jobs within the local job market. The Court finds that the employees holding those jobs are generally long-term employees, and that there is little employee turnover in that employment area. Therefore, while there is a duty on the part of the Plaintiff to diligently try to seek substantially equivalent employment, she needs some additional time in order to do so. There is obvious evidence that, had she remained employed with Amarillo Heart Group and had she been treated as its other employees were treated, Plaintiff Scott would have had long-term employment with the Amarillo Heart Group. There is also sufficient evidence that it is extremely difficult, because of the nature of her employment, for her to find additional comparable employment. Nevertheless, substantially equivalent employment within her area at some time will become available, although it is impossible for the Court to speculate exactly what point in time that might be. The Court believes and finds that this front pay award gives her approximately a year in which to seek that type of substantially equivalent employment and still maintain the degree of other income that she's employed.

The Court finds that front pay in the amount of $49,000 is the best that the Court can do in calculating what is reasonable to her in seeking – and continuing to seek – other substantially equivalent employment, and perhaps being able to obtain it. In arriving at that amount, the Court

has considered the undisputed fact that Plaintiff was able to partially mitigate her damages by finding some comparable employment during 2012. It is further undisputed, and the Court so finds, that the Plaintiff thereby earned approximately $20,000 during 2012, but that her costs and expenses in earning that amount were over $11,000 during 2012. Deducting $9,000 from the Plaintiff's annualized $58,500 income from the Amarillo Heart Group leaves one year of front pay awarded in the total amount of $49,000.00 appropriate in this case.

Of course, as the court cases recognize, this is a speculative endeavor that the Court must engage in, and it is impossible for anybody to know, for sure, exactly what and when that other comparable employment will become available, but the Court concludes that this amount is a reasonable calculation on the basis of the evidence that is before the Court concerning the nature of Plaintiff Scott's employment, her personal qualifications, and the availability, not only in Amarillo but in other areas, of finding substantially equivalent employment.

### *Injunctive Relief*

The Court denies Plaintiff's request for the injunctive relief of court-ordered EEO training for the Defendant's management and employees. It has not been shown at this time to be necessary for Defendant's supervisors or upper management to be EEO trained, under the specific facts of this case. In light of the jury's award of significant punitive damages, the Court is reasonably confident that the Defendant's senior management is now aware of their EEO anti-discrimination and anti-retaliatory obligations.

The requested court-ordered posting of a notice to the Defendant's employees regarding their Equal Employment Opportunity rights is denied because it has not been shown to be necessary. There is no evidence that the Defendant is not already complying with its legal obligations regarding posting of required EEO notices. *See* 42. U.S.C. § 2000e-10./[2]

---

[2] "(a) Every employer, employment agency, and labor organization, as the case may be, shall post and keep posted in conspicuous places upon its premises where notices to employees, applicants for employment, and members are customarily posted a notice to be prepared or approved by the Commission setting forth excerpts from or, summaries of, the pertinent provisions of this subchapter and information pertinent to the filing of a complaint."

### *Punitive Damages*

The Court finds that the jury's punitive damages award is an acceptable verdict by the jury on the issue of the appropriateness of an award of punitive damages. The Court notes that the jury found by clear and convincing evidence that the Defendant acted with malice or reckless indifference to Plaintiff Scott's employment rights when it terminated her, because she engaged in the protected activity of complaining about race discrimination. That finding is well supported by the credible evidence at trial, and there has not been any request by the Defendant that the Court modify that award. The amount found and awarded by the jury is a reasonable amount under the facts of this case. It is a sufficient amount adequate both to punish the Defendant and to deter the Defendant and others from engaging in similar conduct in the future.

The amount found and awarded by the jury is in conformance with the credible evidence regarding whether the Defendant made "good faith efforts" to prevent discrimination in the workplace, its actual anti-discrimination policies, and its actual efforts to educate its employees on the anti-discrimination laws. Considering how the Defendant actually responded to Plaintiff Scott's complaints of discrimination, how it failed to respond adequately to her reports of discrimination, and how it ultimately responded to her complaints by choosing to terminate the Plaintiff because of her reports, clearly a protected activity, both an award of punitive damages and the amount awarded here are warranted under the facts of this case.

### *Prejudgment Interest*

Prejudgment interest should be awarded in order to make a plaintiff whole, as a refusal to award prejudgment interest ignores the time value of money. *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 373 (5th Cir. 2002). A prevailing plaintiff's request for an equitable award of prejudgment interest should be granted "in all but exceptional circumstances." *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996)(quoting *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987))(applying Texas law). Where an action arises under federal law, "it is within the discretion of the district court to select an equitable rate of prejudgment interest." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991). The Fifth

Circuit has "approved the imposition of the federal rate of interest in Title VII cases as making a plaintiff whole, but has not held that only the federal rate of interest is appropriate" for calculating prejudgment interest. *Williams v. Trader Publ'g Co.,* 218 F.3d 481, 488 (5th Cir. 2000)(citing *Conway v. Electro Switch Corp.,* 825 F.2d 593, 600 (1st Cir. 1987)).

Under Title VII, courts generally should calculate interest on past damages based on the date of the adverse employment action. Prejudgment interest should apply to all past injuries, including past emotional injuries. Prejudgment interest is not recoverable, however, for future emotional harm under Title VII. *Thomas v. Tex. Dep't of Crim. Justice,* 297 F.3d 361, 372–73 (5th Cir. 2002).

Plaintiff Scott is entitled to prejudgment interest on her award of back pay and benefits.

The Fifth Circuit has held that where a claim is governed by a federal statute and the statute is silent on the issue of prejudgment interest, "state law is an appropriate source of guidance." *Hansen,* 940 F.2d at 984 (quoting *United States ex rel. Canion v. Randall & Blake,* 817 F.2d 1188, 1193 (5th Cir. 1987)); *see also Wesley v. Yellow Transp., Inc.,* 2010 WL 3606095, *2 (N.D. Tex. Sept.16, 2010) (in Title VII case, "[i]n the absence of a federal statute that establishes the rate of prejudgment interest, state law guides the court's discretion in determining the interest rate").

Accordingly, the Court looks to Texas state law regarding prejudgment interest, as set forth in the Texas Finance Code Sections 304.003(a) and (c), which provide that prejudgment interest shall accrue at the rate of 5% per year, which does not compound, when the prime rate as published by the Board of Governors of the Federal Reserve System is less than 5%, as it is today. *See Wesley,* 2010 WL 3606095, at *1 (applying 5% interest rate). Prejudgment interest may not be assessed or recovered, however, on an award of exemplary damages, Tex. Civ. Prac. & Rem. Code Ann. § 41.007 (Vernon 1997), and under Texas law does not begin to accrue on the date of a plaintiff's termination.

With an exception that is immaterial under the facts of this case, "prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on

the day preceding the date judgment is rendered." Tex. Fin. Code Ann. § 304.104 (Vernon Supp. 2004–05). "Prejudgment interest is computed as simple interest and does not compound." *Id.*

Although the record shows when Plaintiff Scott was terminated (February 11, 2011), and the date she filed her discrimination charge with the EEOC (April 21, 2011), the date, if any, upon which she notified the Defendant that she was making a claim against it is unclear. Under Texas law, her prejudgment begins to accrue 180 days after that unknown date. The Court will therefore use the next known date, the date Scott's EEOC right-to-sue letter was issued (February 8, 2012) as the date to commence the accrual of prejudgment interest. By that known point in time the Amarillo Heart Group had been notified of Plaintiff's claims by the EEOC.

Post-judgment interest will be at the interest rate, compounded annually, governing federal court judgments, 28 U.S.C. § 1961(a). *See Boston Old Colony Ins. Co. v. Tiner Assoc., Inc.,* 288 F.3d 222, 234 (5th Cir. 2002)(regardless of whether a cause of action is based on state law or federal law, federal law determines post-judgment interest, and the federal post-judgment interest applies even in diversity cases).

## *Conclusion*

Judgment will be entered for the Plaintiff in conformance with this opinion and order.

It is SO ORDERED.

Signed this the ___10___ day of April, 2013.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE